UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
RODNEY ALSTON,

                          Petitioner,

           -against-

THOMAS GRIFFIN, Superintendent,
Eastern NY Correctional Facility,

                       Respondent.[1]

-------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

12 Civ. 8092 (CS)(PED)

TO THE HONORABLE CATHY SEIBEL, United States District Judge:

# I. INTRODUCTION

      On October 10, 2005, petitioner Rodney Alston ("petitioner" or "defendant") fatally shot Dacheau Brown outside Club Eclipse in New Rochelle, New York. On August 1, 2006, a Westchester County jury convicted petitioner of second degree murder (N.Y. Penal Law § 125.25(1)), second degree criminal possession of a weapon (N.Y. Penal Law § 265.03) and third degree criminal possession of a weapon (N.Y. Penal Law § 265.02(4). He was sentenced on September 25, 2006 to concurrent terms of twenty years to life imprisonment (murder), fifteen years imprisonment with five years post-release supervision (criminal possession second) and seven years imprisonment with three years post-release supervision (criminal possession third). Petitioner is currently incarcerated at Great Meadow Correctional Facility in Comstock, New York.

---

[1] Although the Petition and the docket indicate that petitioner is incarcerated at Upstate Correctional Facility, the DOCCS inmate locator (nysdoccslookup.doccs.ny.gov) notes that he is currently incarcerated at Eastern NY Correctional Facility. Thus, Thomas Griffin, Superintendent of Eastern NY Correctional Facility, is substituted as respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. The Clerk of the Court shall amend the caption to reflect the substitution.

Presently before this Court is petitioner's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  This petition is before me pursuant to an Order of Reference dated December 20, 2012  (Dkt. #7).  For the reasons set forth below, I respectfully recommend that Your Honor deny the petition in its entirety.

## II.  <u>BACKGROUND</u>[2]

A.  <u>Evidence Adduced at Trial</u>

Thirty-three year old Dacheau Brown, nicknamed "2-5," owned a party promoting business called "Deuce Nickel Entertainment."  T. 506, 509. 517.[3]  On Sunday, October 9, 2005, Brown arranged a party at Club Eclipse.  T. 511, 517, 519.  Brown's girlfriend, Keshia South, often assisted Brown at his Club Eclipse parties by collecting money at a booth near the front door.  T. 517-18.  On October 9, 2005, South arrived at Club Eclipse a little after 11:00 p.m.  T. 517, 519.  Brown was already there.  T. 519-20.   Anthony Bowden, the front door bouncer, arrived around midnight.  T. 546-47.

Over one hundred people came to Brown's party that night (and into the next morning).  T. 520.  Bowden frisked everyone for contraband (particularly knives and guns) before they were allowed to enter.  T. 535-36, 549.  Bowden testified that he also checked everyone's identification.  T. 559.  Customers were allowed to enter if they were eighteen and, according to South and Bowden, were given a wrist band if they were twenty-one or older (so the bartender

---

[2] Unless otherwise indicated, the information within this section is gleaned from the instant petition (Dkt. #1), respondent's Affidavit in Opposition to Petition for Writ of *Habeas Corpus* ("Resp. Aff.") (Dkt. #9) and respondent's Memorandum of Law and Exhibits ("Resp. Opp.") (Dkt. #10).

[3] Numbers preceded by the letter "T." refer to pages from the trial transcript.

knew they were old enough to drink). T. 542, 559-60. Devron Chambers testified, however, that he was at Club Eclipse on the night in question, that he had been there on one other occasion and drank alcohol even though he was underage, and that he never saw anyone checking identification at the club. T. 575, 584-85. Jack Benjamin, who was also present on the night in question, testified that he had been going to Dacheau Brown's parties every week for the past year and there was no rule about how old you had to be to drink at those parties. T. 711-12, 727-79.

Petitioner, who was eighteen, arrived at the club via taxi between 12:30-1:00 a.m.; Bowden patted him down, found no contraband and allowed him to enter. T. 549, 553, 562-63, 899-901. Upon entering the club, petitioner met up with "a lot of people," including Carlos Brickle, Rich Falkner and Ray Gilkes. T. 923. The club sold liquor by the glass and by the bottle. T. 752. Petitioner and two of his friends immediately purchased two bottles of Hennesey for $240 and started drinking. T. 902-05, 923. Five people shared in the bottles of Hennesey; both bottles were finished by the time petitioner left the club. T. 905.

Benjamin testified that he "hung out" with petitioner at the club that night and they were both drinking. T. 714. Petitioner showed him a chrome colored handgun and told Benjamin if he "had any problems," he (petitioner) was there for him. T. 714-16. Benjamin replied that he "was good" and "there was no problem." T. 716. Benjamin told Brown and Kendall Miller (Brown's business partner) that petitioner had a gun, but they did nothing. T. 726-17, 752.

By 2:30 a.m., petitioner was stumbling around and feeling drunk. T. 906. Around that time, petitioner asked Donald Evans (who was videotaping the party) to come into the bathroom and tape something. T. 671-72, 695-96. Evans filmed petitioner and four of his friends screaming and chanting and waving money around. T. 696. Petitioner had a chrome revolver

-3-

and a glass of alcohol in his hands, and there was a bottle of Hennesey right behind him.  T. 672, 696.  According to petitioner, his friend, Jaishon Banks, gave him the gun "to use on the DVD."  T. 906-07.  Evans filmed petitioner opening the gun and showing the bullets inside.  T. 673.  Although Evans thought petitioner was "out of control" in the bathroom, wildly screaming and chanting, Evans believed petitioner was completely sober.  T. 698.  After Evans left the bathroom, he told Brown that petitioner had a gun.  T. 677.  Evans later gave the police a copy of approximately forty seconds of video showing petitioner and his friends in the bathroom.  T. 694-95.

Kevin Calvin was working at the club on the night in question and first noticed petitioner standing against a wall with a group of his friends, drinking.  T. 636-38.  Later that night, Calvin saw petitioner in the bathroom with a group of his friends, collectively chanting, screaming and laughing while someone videotaped them.  T. 656-67.  Petitioner was waving around a chrome or silver revolver, saying things like "these niggers can get it" and "we get it poppin."  T. 639-40, 657.  "Poppin" is a "common term used among inner city youth" which means "we are not afraid to do things, we'll fight, we'll shoot, we'll do whatever."  T. 641.  Calvin noticed the Hennesey bottle near petitioner; it appeared to Calvin that petitioner and his friends were "most likely" drunk.  T. 657-58.  Calvin reported to Brown that there was somebody in the bathroom with a gun; Brown responded that he already knew.  T. 642.

After the filming, petitioner and his friends took the bottle of Hennesey onto the dance floor and continued drinking (shots of Hennesey).  T. 908-09.  Petitioner "forgot all about" the gun which he had placed in his pocket.  T. 909.  Benjamin saw petitioner on the dance floor throwing liquor and acting "completely out of control drunk."  T. 733.  Brown went to the dance floor to see what was going on.  T. 744-45.  Miller followed, and observed Brown arguing with a

-4-

couple of people, including petitioner. T. 745. The lights came on, indicating that the party was over (at approximately 2:45 a.m.). T. 746-47. Brown escorted petitioner to the cashier's booth and told Bowden he did not want petitioner inside the rest of the night. T. 551-53. Bowden walked petitioner outside. T. 553.

Brown and the bouncers began clearing all the customers out of the club. T. 550, 747. As people filed out, Miller went outside "to get everybody clear to go home" and observed Brown arguing with petitioner and Jaishon Banks. T. 747-48. Brown told petitioner he would not be allowed in the club anymore. T. 748. Banks challenged Brown to a fist fight; Brown took off his jacket and threw it to someone, and Brown and Banks walked down the middle of the street toward Columbus Avenue. T. 556, 644-45, 684-85, 722, 749, 761, 764-65. A crowd of people followed them. T. 646, 723. Brown and Banks reached the sidewalk on the corner of Columbus Avenue and, as they squared off to fight, petitioner came out from around the corner and fired multiple gunshots from a chrome revolver. T. 557, 687, 765-70. Four bullets struck Brown. T. 871. He died later that evening at the hospital. T. 627.

Devron Chambers left Club Eclipse at the close of the party and heard gunshots as he walked to his car. T. 577-78. As Chambers was getting into his car, petitioner appeared and asked him for a ride home. T. 581-82. Petitioner's speech was heavily slurred, and Chambers believed petitioner was intoxicated. T. 586-90. Chambers drove petitioner, Jaishon Banks and Ray Gilkes home. T. 581.

B. Direct Appeal

Petitioner (by and through counsel) timely appealed his conviction to the Appellate Division, Second Department on the following grounds: (1) the trial court erroneously refused

to charge second degree manslaughter (Resp. Opp., Exh. 2, at 22-26);[4] (2) petitioner's intoxication negated his specific intent to commit murder (id. at 27-30); and (3) petitioner was deprived of a fair trial because the trial court admitted the videotape and a letter written by petitioner into evidence (id. at 31-32).  On or about January 22, 2010, petitioner filed a *pro se* supplemental brief in which he raised four additional arguments:  (1) trial counsel was ineffective because he objected to the impeachment of a prosecution witness (Exh. 4, at 2); (2) trial counsel was ineffective because he failed to object to the prosecution's claim that petitioner's letters to his friends contained coded threats (id. at 3); (3) trial counsel was ineffective because he failed to investigate potential defense witnesses (id. at 4); and (4) the trial court erred by submitting to the jury both second degree criminal possession of a weapon and third degree criminal possession of a weapon (id. at 5).

By Decision and Order dated October 12, 2010, the Second Department affirmed petitioner's judgment of conviction.  People v. Alston, 77 A.D.3d 762, 909 N.Y.S.2d 115 (2d Dep't 2010).  The Appellate Division specifically held: (1) petitioner's claim regarding the trial court's refusal to charge second degree manslaughter was foreclosed by petitioner's second degree murder conviction and the jury's implicit rejection of the next lesser included offense (first degree manslaughter); (2) petitioner's claim that his intoxication negated his intent was unpreserved and, in any event, the evidence was legally sufficient to establish that he manifested the requisite criminal intent and the verdict was not against the weight of the evidence; (3) the trial court did not err in admitting the videotape into evidence and the letter was never admitted into evidence (and petitioner was properly cross-examined about the letter's content); (4)

---

[4] Hereinafter, all citations to "Exh. ___" refer to exhibits found in Respondent's Record of Exhibits.

petitioner's claims of ineffective assistance of counsel based upon matter dehors the record were

unreviewable and, to the extent his claims were record based, he "did not demonstrate that

defense counsel failed to provide meaningful representation, or that there was no strategic or

legitimate explanation for defense counsel's conduct;" and (5) petitioner's challenge to his

conviction of both charges of criminal possession of a weapon was unpreserved and, in any

event, without merit. Id. at 762-64, 909 N.Y.S. 2d 115-17.

Petitioner, by and through counsel, timely submitted an application for leave to appeal to

the New York Court of Appeals, wherein he argued:

> 7.  It is the Appellant's contention that the lower court erred in finding that
> the evidence supported the verdict.  More specifically, the lower court
> mischaracterized the evidence as to intoxication and the lack of criminal intent it
> provided.  Furthermore, the videotape evidence introduced into evidence was
> clearly prejudicial as to overcome any dispassionate analysis of the facts and
> circumstances.
> Additionally, the jury could not on the entire evidence before it, reach
> such conclusion and that conclusion affirmed by the lower court herein.

Exh. 7.  Appellate counsel attached copies of the briefs filed in the Appellate Division to his

leave letter.  Id.  The Court of Appeals denied petitioner leave to appeal on August 2, 2011.

People v. Alston, 17 N.Y.3d 813, 954 N.E.2d 92, 929 N.Y.S.2d 801 (2011).  Petitioner did not

seek a writ of certiorari to the United States Supreme Court.

C.  The Instant Petition

Petitioner timely[5] filed the instant Petition for a Writ of Habeas Corpus on or about

October 17, 2012,[6] wherein he seeks habeas review of the following claims: (1) the trial court

---

[5]  See 28 U.S.C. § 2244(d)(1).

[6]  The date on which petitioner placed the instant Petition in the prison mailing system.
See Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001) (extending the "mailbox rule," Houston v.
Lack, 487 U.S. 266 (1988), to pro se petitions for habeas relief).

erred when it failed to submit the lesser included offense of second degree manslaughter to the jury; (2) petitioner's intoxication negated his specific intent to commit murder; (3) petitioner was prejudiced because the trial court erroneously admitted into evidence the videotape and some letters written by petitioner to his friends; (4) trial counsel was ineffective because he failed to investigate witnesses helpful to the defense; (5) trial counsel was ineffective because he objected to the prosecution's attempt to refresh the recollection of its witness, Jack Benjamin (which, if allowed, would have shown that Benjamin made a prior inconsistent statement); and (6) the trial court erred by submitting to the jury both second degree criminal possession of a weapon and third degree criminal possession of a weapon.

## III. APPLICABLE LAW

"Habeas review is an extraordinary remedy." Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)). Before a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254. If there has been procedural compliance with these statutes, the court must then determine the appropriate standard of review applicable to the petitioner's claim(s) in accordance with  § 2254(d). The procedural and substantive standards applicable to habeas review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), are summarized below.

A.  Timeliness

The AEDPA established a one-year statute of limitations for the filing of a habeas corpus petition seeking relief from a state court conviction. See 28 U.S.C. § 2244(d)(1). The one-year limitation period runs from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id.

The AEDPA's statute of limitations is tolled during the pendency of a properly filed application for state post-conviction relief, or other collateral review, of a claim raised in the petition.  See id. § 2244(d)(2).  The one-year limitation period is also subject to equitable tolling, which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period."  Harper v. Ercole, 648 F.3d 132, 137 (2d Cir. 2011).  "To secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances.  He must further demonstrate that those circumstances caused him to miss the original filing deadline."  Id.  Additionally, "[c]onsistent with the maxim that equity aids the vigilant, a petitioner seeking equitable tolling of AEDPA's limitations period must demonstrate that he acted with reasonable diligence throughout the period he seeks to toll."  Id. at 138 (internal quotation marks and citations omitted); see also Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (A petitioner seeking equitable tolling must "demonstrate a causal relationship between the extraordinary

circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.").

B.  Procedural Default

      Federal habeas corpus review of a state court's denial of a state prisoner's federal constitutional claim is barred if the state court's decision rests on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional violation, or that he is actually innocent.  See Bousley, 523 U.S. at 622; Coleman v. Thompson, 501 U.S. 722, 750 (1991).  See also Lee v. Kemna, 534 U.S. 362, 375 (2002); Dunham v. Travis, 313 F.3d 724, 729 (2d Cir. 2002).  A procedural ground is "independent" if "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar."  See Harris, 489 U.S. at 263 (internal quotation marks omitted).  A procedural bar is "adequate" if it is "based on a rule that is firmly established and regularly followed by the state in question." Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006) (internal quotation and citation omitted).

      In certain limited circumstances, however, "even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the rule in a particular case is 'exorbitant.'"  See Garvey v. Duncan, 485 F.3d 709, 713-14 (2d Cir. 2007) (citing Lee, 534 U.S. at 376).  To this end, the Second Circuit has set forth the following "guideposts" for evaluating the adequacy of the state procedural bar in the context of "the specific circumstances presented in the case, an inquiry that includes an evaluation of the asserted state interest in applying the procedural rule in such circumstances":

      (1) whether the alleged procedural violation was actually relied on in the trial

court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (quoting Lee, 534 U.S. at 381-85).

C.  Exhaustion

A federal court may not grant habeas relief unless the petitioner has first exhausted his claims in state court.  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented").  The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claims.  Rose v. Lundy, 455 U.S. 509, 518-19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted).  "Because

non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims." Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209, 221 (1982)).  Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted).  In doing so, a petitioner need not cite chapter and verse of the Constitution; there are a number of other ways in which a petitioner may fairly apprise the state court of the constitutional nature of his claim, including: "a) reliance on pertinent federal cases employing constitutional analysis, b) reliance on state cases employing constitutional analysis in like fact situations, c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011).  A habeas petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."  Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted).  "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)."  Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991).  Such a procedurally barred claim may be deemed exhausted by a federal habeas court. See, e.g., Reyes, 118 F.3d at 139.  However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual

-12-

innocence," <u>Schlup v. Delo</u>, 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

When confronted with a "mixed" petition containing both exhausted and unexhausted claims, a federal court has the following options: (1) it may stay the proceedings and hold the petition in abeyance in order to permit the petitioner to return to state court and exhaust the unexhausted claim(s); (2) it may permit the petitioner to amend the petition and excise any unexhausted claim; (3) it may dismiss without prejudice the entire petition; or (4) it may review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless." <u>See</u> 28 U.S.C. § 2254(b)(2); <u>Rhines v. Weber</u>, 544 U.S. 269, 277-78 (2005); <u>Zarvela v. Artuz</u>, 254 F.3d 374, 378-82 (2d Cir. 2001); <u>Reyes v. Morrissey</u>, No. 07 Civ. 2539, 2010 WL 2034531, at *9 (S.D.N.Y. Apr. 21, 2010) (Report and Recommendation), *adopted by* 2010 WL 2034527 (S.D.N.Y. May 19, 2010).[7]

D.  <u>Standard of Review</u>

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991).  <u>See</u> 28 U.S.C. § 2254(a).  When reviewing petitions filed subsequent to the AEDPA's effective date, a federal court may not grant habeas relief unless the petitioner establishes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the

---

[7]  Copies of all unpublished cases available only in electronic form cited herein have been mailed to petitioner.  <u>See</u> <u>Lebron v. Sanders</u>, 557 F.3d 76, 78 (2d Cir. 2009).

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (d)(2). The AEDPA

deferential standard of review will be triggered if the petitioner's claim "was adjudicated on the

merits in State court proceedings." 28 U.S.C. § 2254(d); see Bell v. Miller, 500 F.3d 149, 154-

55 (2d Cir. 2007). "For the purposes of AEDPA deference, a state court 'adjudicate[s]' a state

prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2)

reduces its disposition to judgment." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).

A state court's decision is "contrary to" clearly established Federal law if (1) "the state

court applies a rule that contradicts the governing law set forth [by the Supreme Court of the

United States]" or (2) "the state court confronts a set of facts that are materially indistinguishable

from a decision of [the Supreme Court] and nevertheless arrives at a result different from

[Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). "Clearly

established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to

the dicta, of [Supreme Court] decisions. And an 'unreasonable application of' those holdings

must be objectively unreasonable, not merely wrong; even 'clear error' will not suffice." White

v. Woodall, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted). "The

critical point is that relief is available under § 2254(d)(1)'s unreasonable application clause if,

and only if, it is so obvious that a clearly established rule applies to a given set of facts that there

could be no 'fairminded disagreement' on the question." Id. at 1706-07 (quoting Harrington v.

Richter, 131 S. Ct. 770, 786-87 (2011)) ("As a condition for obtaining habeas corpus from a

federal court, a state prisoner must show that the state court's ruling on the claim being presented

in federal court was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement.").

Finally, under the AEDPA, the factual findings of state courts are presumed to be correct.

-14-

<u>See</u> 28 U.S.C. §2254(e)(1); <u>see also</u> <u>Nelson v. Walker</u>, 121 F.3d 828, 833 (2d Cir. 1997).  The

petitioner must rebut this presumption by "clear and convincing evidence."  28 U.S.C.

§2254(e)(1).

## IV.  ANALYSIS

A.  <u>Procedurally Barred Claims (Claims Two and Six)</u>

　　　In his second claim for habeas relief, petitioner alleges that his intoxication negated his

specific intent to commit murder.  In his sixth claim for habeas relief, petitioner contends that the

trial court erred by submitting to the jury both second degree criminal possession of a weapon

and third degree criminal possession of a weapon.  Petitioner presented these arguments to the

Second Department on direct appeal; the Second Department rejected them on procedural

grounds and, alternatively, on their merits:

> 　　　Furthermore, the defendant's contention that the prosecution failed to
> prove his guilt by legally sufficient evidence because his intoxication rendered
> him incapable of forming the requisite criminal intent is unpreserved for appellate
> review (<i>see</i> CPL 470.05(2); . . .).  In any event, viewing the evidence in the light
> most favorable to the People, we find that it was legally sufficient to establish
> beyond a reasonable doubt that the defendant manifested the requisite criminal
> intent.
> 　　　. . .
> 　　　The defendant's remaining contention, raised in his supplemental pro se
> brief, is not preserved for appellate review (<i>see</i> CPL 470.05(2)), and, in any
> event, is without merit.

<u>People v. Alston</u>, 77 A.D.3d at 763-64, 909 N.Y.S.2d 115.

　　　New York's contemporaneous objection rule (codified at section 470.05(2) of New

York's Criminal Procedure Law) "provides that, with a few exceptions not applicable here, New

York appellate courts will review only those errors of law that are presented at a time and in a

manner that reasonably prompted a judge to correct them during criminal proceedings."  <u>Downs</u>

<u>v. Lape</u>, 657 F.3d 97, 103 (2d Cir. 2011).  Thus, "[u]nder New York law, a defendant must

object to an alleged error in a jury instruction before the trial court in order to preserve the issue for appeal." Reyes v. Keane, 118 F.3d 136, 138 (2d Cir. 1997). See People v. Medina, 18 N.Y.3d 98, 104, 960 N.E.2d 377, 381, 936 N.Y.S.2d 608, 612 (2011) ("[I]n order to preserve a claim of error in . . . a charge to the jury, a defendant must make his or her position known to the court and . . . the argument must be specifically directed at the alleged error.") (quotation marks and citation omitted). Similarly, in order to preserve his insufficient evidence claim, petitioner was required to make a motion to dismiss at the close of the prosecution's case. See Scission v. Lempke, 784 F. Supp.2d 237, 243-44 (W.D.N.Y. 2011). "Moreover, New York courts have consistently held that a general motion to dismiss is not sufficient to preserve the contention that the evidence at trial was insufficient to establish a specific element of the crime charged." See id. at 244 (citing People v. Gray, 86 N.Y.2d 10, 20-22, 652 N.E.2d 919, 629 N.Y.S.2d 173 (1995)). See also Richardson v. Greene, 497 F.3d 212, 218 (2d Cir. 2007) ("New York's highest courts uniformly instruct that to preserve a particular issue for appeal, defendant must *specifically focus on the alleged error*.") (citation omitted; emphasis added in *Richardson*).

The record here reveals that, at the close of the People's case (T. 890) and again at the close of petitioner's case (T. 945-46), defense counsel made only a general motion to dismiss which did not preserve petitioner's insufficient evidence claim. Following the charge conference, the trial court summarized the substance of the conference on the record and gave counsel an opportunity to state objections. T. 946-51. The trial court specifically stated that it would "charge both Criminal Possession of a Weapon in the Second Degree, Criminal Possession of a Weapon in the Third Degree" (T. 948); defense counsel did not object. T. 946-51. On direct appeal, although the Second Department rejected petitioner's insufficient evidence and jury charge claims on their merits, it also explicitly invoked an "independent" state

-16-

procedural ground (New York's contemporaneous objection rule) as a basis for its decision. Where a state court has expressly relied on a procedural default, federal habeas review is foreclosed even if the state court also addressed the merits of the federal claim. See Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) (federal habeas review barred where state court held claim "not preserved for appellate review" but then ruled on the merits of the claim "in any event").

The Second Circuit has consistently recognized New York's contemporaneous objection rule as an independent and adequate state procedural rule barring habeas review. See, e.g., Whitley v. Ercole, 642 F.3d 278, 292 (2d Cir. 2011); Brown v. Ercole, 353 F.App'x 518, 520 (2d Cir. 2009); Garvey, 485 F.3d at 720; Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999) (federal courts "have observed and deferred to New York's consistent application of its contemporaneous objection rules"). Further, the Appellate Division's application of CPL 470.05(2) in this case was not exorbitant. As to the first *Cotto* consideration, it is "meaningless to ask whether the alleged procedural violation was actually relied on in the trial court–the violation only first occurred when defendant raised an argument on appeal that he had not raised earlier." See Garvey, 485 F.3d at 719. Indeed, perfect compliance with CPL 470.05 would have given the trial court an opportunity to address head-on the issues petitioner now raises. The second *Cotto* consideration clearly weighs against petitioner because, as discussed above, New York case law requires compliance with the contemporaneous objection rule under the specific circumstances presented here. The third *Cotto* consideration similarly disfavors petitioner because, just as in *Garvey*, petitioner did not simply violate the "formal requirements" of CPL 470.05(2), but rather "the very essence" of the rule. See id. at 720. Moreover, petitioner's compliance would have served a legitimate purpose in that "[a]t a bare minimum, the trial court could have developed a

-17-

factual record supporting its decision[s] that could then properly be reviewed on appeal." See Whitley, 642 F.3d at 290.

Because there is an adequate and independent finding by the Appellate Division that petitioner procedurally defaulted on the insufficient evidence and jury charge claims he now asserts as grounds for habeas relief, petitioner must demonstrate in his habeas petition "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." See Coleman, 501 U.S. at 750. Petitioner, however, has made no attempt to show cause or prejudice, and there is no indication that this Court's failure to address the merits of the unpreserved claims would result in a fundamental miscarriage of justice. Accordingly, I conclude, and respectfully recommend, that petitioner's procedural default bars federal review of his second and sixth claims for habeas relief.[8]

B.  Unexhausted Claims (Claims One, Four, Five and a portion of Claim Three)

Petitioner alleges, in his first claim for habeas relief, that the trial court erred when it failed to submit the lesser included offense of second degree manslaughter to the jury. As his third ground for habeas relief, petitioner claims he was prejudiced because the trial court erroneously admitted into evidence the videotape and some letters petitioner wrote to his friends. Petitioner's fourth claim for habeas relief is that trial counsel was ineffective because he failed to investigate witnesses helpful to the defense. Petitioner also alleges, as his fifth ground for habeas relief, that trial counsel was ineffective because he objected to the prosecution's attempt

---

[8] Dismissal of a claim for habeas relief on the ground of procedural default amounts to "a disposition of the habeas claim on the merits." See Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011).

to refresh the recollection of its witness, Jack Benjamin (which, if allowed, would have shown that Benjamin made a prior inconsistent statement). Petitioner's first, fourth and fifth claims, as well as the portion of his third claim challenging admission of the letters, are unexhausted.

Petitioner raised his first, third, fourth and fifth claims for habeas relief on direct appeal to the Second Department, which addressed them as follows:

> As the People correctly contend, where a court charges the next lesser included offense of the crime alleged in the indictment, but refuses to charge lesser degrees than that . . . the defendant's conviction of the crime alleged in the indictment forecloses a challenge to the court's refusal to charge the remote lesser included offenses. Thus, review of the defendant's challenge to the [Supreme] Court's refusal to charge manslaughter in the second degree as a lesser-included offense of murder in the second degree is foreclosed by the jury verdict finding him guilty of murder in the second degree, the crime alleged in the indictment, and its implicit rejection of the lesser-included offense of manslaughter in the first degree.
> . . .
> Contrary to the defendant's contention, the trial court did not err in permitting the People to introduce into evidence a videotape which showed the defendant displaying a chrome-colored revolver shortly before the shooting. We decline to reach the defendant's contention that he was deprived of a fair trial due to the alleged erroneous admission into evidence of a certain letter written by the defendant, since the letter was never actually admitted into evidence at trial. Any cross-examination of the defendant about the contents of the letter was a proper response to the testimony elicited on direct examination.
> Insofar as the defendant's allegations of ineffective assistance of counsel are based upon matter dehors the record, they are not reviewable on this appeal. To the extent that the record permits review of the defendant's claim that he was deprived of the effective assistance of counsel, the defendant did not demonstrate that defense counsel failed to provide meaningful representation, or that there was no strategic or legitimate explanation for defense counsel's conduct.

People v. Alston, 77 A.D.3d at 762-64, 909 N.Y.S.2d 115 (internal quotation marks and citations omitted). Thus, the Appellate Division denied petitioner's first, third and fifth habeas claims on the merits and concluded that petitioner's fourth habeas claim (based on facts outside the record) was unreviewable.

*1. Claims "deemed" exhausted (claims one, five and a portion of claim three)*

On appeal to the Court of Appeals, although petitioner attached copies of the appellate briefs to his leave application, he specifically argued only two claims: (1) his intoxication rendered him incapable of forming the requisite intent (habeas claim #2 which, as discussed above, is procedurally barred); and (2) the trial court erroneously admitted the videotape into evidence (a portion of habeas claim #3). Exh. 7. "[A]rguing one [or more] claim[s] in [a leave application] while attaching an appellate brief without explicitly alerting the state court to each claim raised does not fairly present such claims for purposes of the exhaustion requirement underlying federal habeas jurisdiction." Jordan v. Lefevre, 206 F.3d 196, 198-99 (2d Cir. 2000). See Gross v. Superintendent Five Points Corr. Facility, No. 11-CV-00927, 2012 WL 4800976, at *3 (W.D.N.Y. Oct. 9, 2012) ("Where the application for leave to appeal argues one or more specific claims but only makes a passing reference to possible other claims found in the attached briefs, the claims mentioned in passing have not been fairly presented to the Court of Appeals.") (citing Jordan, 206 F.3d at 198-99). Therefore, petitioner failed to exhaust his first and fifth[9] habeas claims, as well as the portion of his third habeas claim challenging admission of the letters.

Nevertheless, those claims are "deemed exhausted" because they are now procedurally barred under state law. See St. Helen v. Senkowski, 374 F.3d 181, 183 (2d Cir. 2004). Petitioner cannot again seek leave to appeal those claims in the Court of Appeals because he has already made the one request for leave to appeal to which he is entitled. See N.Y. Ct. Rules § 500.20(a)(2). He is also precluded from raising those claims in a collateral proceeding because

---

[9] Record-based ineffective assistance of trial counsel claims may be brought on direct appeal. See McDowell v. Heath, No. 09 Civ. 7887, 2013 WL 2896992, at *4 (S.D.N.Y. June 13, 2013).

they could have been (and were) raised on direct appeal to the Appellate Division.  See N.Y. Crim. Proc. Law § 440.10(2)(c).  Petitioner has not alleged the cause and prejudice necessary to overcome his forfeiture, nor has he alleged that he is actually innocent or that the court's failure to consider the claims would result in a fundamental miscarriage of justice.  Accordingly, I conclude, and respectfully recommend, that petitioner's allegations regarding the trial court's failure to charge second degree manslaughter (habeas claim #1), the trial court's erroneous admission into evidence of letters written by petitioner (a portion of habeas claim #3) and trial counsel's failure to object to the prosecution's attempt to refresh a witness's recollection (habeas claim #5) are procedurally barred from consideration by this Court and must be dismissed.

   2.  *"Plainly meritless" fourth claim*

   Petitioner's fourth habeas claim–that trial counsel was ineffective because he failed to investigate witnesses helpful to the defense–is unexhausted but may not be "deemed" exhausted because petitioner has remedies available in state court.  "To properly exhaust an ineffective assistance of trial counsel claim that relies on evidence outside the pretrial and trial record . . . the petitioner must raise it as part of a motion to vacate judgment under CPL § 440.10 and then seek leave to appeal to the Appellate Division."  Carpenter v. Unger, Nos. 10-CV-1240, 12-CV-0957, 2014 WL 4105398, at *25 (N.D.N.Y. Aug. 20, 2014) (citation omitted).  Petitioner has not filed a 440.10 motion.  The instant petition is thus a "mixed petition," containing both an exhausted claim (the portion of claim #3 challenging admission of the videotape) and an unexhausted claim (claim #4).  See Rhines, 544 U.S. at 271.  This Court may review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless."  See 28 U.S.C. § 2254(b)(2); Rhines, 544 U.S. at 277-78.  Petitioner's unexhausted ineffective assistance of counsel claim is plainly meritless.

In order to establish his claim of ineffective assistance of trial counsel, petitioner must demonstrate (1) that his attorney's performance "fell below an objective standard of reasonableness" and (2) that there is a "reasonable probability" that, but for counsel's error, "the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). "The *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001). In considering whether counsel's performance was deficient under *Strickland*'s first prong, decisions by trial counsel that "fall squarely within the ambit of trial strategy, . . . if reasonably made," cannot give rise to a claim of ineffectiveness. United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987). Moreover, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 690). The second prong focuses on prejudice to the petitioner. A habeas petitioner bears the burden of establishing *both* deficient performance and prejudice. See Greiner, 417 F.3d at 319. Thus, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.

Petitioner alleges, in his fourth claim for habeas relief, that trial counsel was ineffective because he made no attempt to locate petitioner's friends who were with him all night at Club Eclipse and who would testify that petitioner was intoxicated. Petitioner contends that he provided trial counsel with the addresses and phone numbers of Carlos Brickle, Ray Gilkes and Richard Faulkner but, apart from leaving messages on their cellphones, trial counsel made no attempt to contact them. Petitioner argues that their testimony would have corroborated his own

testimony and supported defense counsel's theory that petitioner was so intoxicated he could not have formed the requisite intent to commit murder.

Trial counsel stated on the record that his investigator tried to contact petitioner's friends but they were unwilling to speak to him. T. 796.[10]   During his opening statement, defense counsel explained that evidence of petitioner's intoxication would not come from petitioner's friends:

> Now you might be thinking, it's so easy for him [petitioner] to testify and say he was drunk.  Anyone could take the stand and say they were drunk.  Anyone could say that.  But the evidence corroborating that will not come from defense witnesses.  That evidence will come from prosecution witnesses.  Prosecution witnesses, the Government's own witnesses, friends and business associates of 2-5's, not friends of Rodney's will testify and corroborate his level of intoxication.

T. 498.  Indeed, on cross-examination, three prosecution witnesses (Chambers, Calvin and Benjamin) testified that petitioner was drunk.  T. 586-90, 657-58, 733.  "The decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess.  Thus, counsel's decision as to whether to call specific witnesses– even ones that might offer exculpatory evidence–is ordinarily not viewed as a lapse in professional

---

[10]   During trial, the prosecution attempted to lay the foundation for a missing witness charge by eliciting testimony from a police witness that Richard Faulkner and Carlos Brickle (who appeared on the videotape with petitioner) were present in the courtroom.  T. 791.  Upon defense counsel's objection, the court heard argument from counsel and ruled that the prosecution could not pursue that line of questioning.  T. 791-99.  The trial court revisited the issue during the charge conference, and ruled on the record as follows:

> I will not permit any discussion in the prosecutor's summation about the failure of the defendant to call any witnesses even though there was some development of that theory in the courtroom.  I interrupted it and the reason being, I just don't think in this case it would be fair, as I stated inasmuch and I know the People disagree, as Mr. Warhit made it clear that he made all kinds of attempts to speak to these individuals and they have decided for whatever they have not to speak to him or his investigators.

T. 947-48.

-23-

representation." <u>Greiner</u>, 417 F.3d at 323 (internal quotation marks and citations omitted). Here, defense counsel's strategy was certainly reasonable under the circumstances; it was equally sound even assuming defense counsel affirmatively decided to forego testimony from petitioner's friends.  Defense counsel's decision to extract evidence of petitioner's intoxication from prosecution witnesses prevented the prosecution from undermining the intoxication testimony by attacking the witnesses's bias or credibility.  "The possible damage that could be done to a defendant's case on cross-examination of a defense witness is a tactical consideration that may well recommend against calling a witness." <u>Ortiz v. United States</u>, No. 01–CV–9990, 2002 WL 31427356, at *2 (S.D.N.Y. Oct. 30, 2002).  Even assuming *arguendo* that defense counsel's performance was somehow deficient under *Strickland*'s first prong, petitioner fails to demonstrate that he was prejudiced by defense counsel's failure to secure testimony from Faulkner, Brickle and Gilkes.  Petitioner does not set forth specifically what their testimony would be and, in any event, there is no indication that their testimony would be anything but cumulative.  In sum, "complaints of uncalled witnesses are not favored in federal habeas review, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified [to] are largely speculative." <u>Hodges v. Bezio</u>, No. 09-CV-3402, 2012 WL 607659, at *10 (E.D.N.Y. Feb. 24, 2012) (citations omitted). Accordingly, because petitioner's fourth claim is plainly meritless, I respectfully recommend, despite petitioner's failure to exhaust that claim, that Your Honor should dismiss it on its merits pursuant to 28 U.S.C. § 2254(b)(2).

C.  <u>Remaining Portion of Claim Three is Meritless</u>

During pretrial hearings, defense counsel argued that the videotape Donald Evans provided to police (showing petitioner and his friends in the Club Eclipse bathroom) was highly

-24-

prejudicial and should not be allowed into evidence.  Transcript of Wade & Sandoval Hearings, at 58-62.  The court reserved decision.  Id. at 64.  During jury selection, the court denied defense counsel's application on the ground that the videotape was probative of two material issues: (1) petitioner's possession of a firearm and (2) identity of petitioner as the perpetrator.  T. 188-90. The videotape was received into evidence and played for the jury during Evans's testimony.  T. 673-75.

As the remaining contention in his third habeas claim, petitioner reiterates his argument that the videotape was highly inflammatory and prejudicial and, thus, should not have been admitted into evidence.  Petitioner exhausted this claim on direct appeal; the Appellate Division's written decision denying the claim on its merits represents the last-reasoned state court decision to address petitioner's challenge to admission of the videotape.  See People v. Alston, 77 A.D.3d at 763, 909 N.Y.S.2d 115.  Accordingly, on habeas review, I must apply the deferential AEDPA review standard in evaluating the remaining portion of petitioner's third habeas claim.  See Sellan, 261 F.3d at 312.

It is well-settled that "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus."  Taylor v. Curry, 708 F.2d 886, 891 (2d Cir. 1983).  A petitioner seeking habeas relief from an allegedly erroneous evidentiary ruling must "show that the error deprived her of a fundamentally fair trial."  Id.  See also Zarvela v. Artuz, 364 F.3d 415, 418 (2d Cir.2004) ("Even erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner can show that the error deprived him of a fundamentally fair trial.") (internal quotation marks and citation omitted).  Thus, in evaluating a habeas petitioner's challenge to a state court's evidentiary ruling, a habeas court should engage in a two-part analysis, examining (1) whether the trial court's

evidentiary ruling was erroneous under New York State law, and (2) whether the error amounted to the denial of the constitutional right to a fundamentally fair trial. See Perez v. Phillips, 210 F.App'x 55, 57 (2d Cir. 2006); Wade v. Mantello, 333 F.3d 51, 59 (2d Cir. 2003). As set forth below, this Court has reviewed the trial court's evidentiary ruling to which petitioner objects under this two-part test and concludes that petitioner's evidentiary claim lacks merit.

"Trial judges have considerable discretion in making evidentiary determinations, and absent a serious abuse of that discretion, deference to the trial judge's decision is due." Heslop v. Artus, No. 08-CV-1105, 2012 WL 6553399, at *8 (N.D.N.Y. Mar. 22, 2012) (Report-Recommendation and Order), *adopted by* 2012 WL 6553394 (N.D.N.Y. Dec. 14, 2012). Petitioner has not demonstrated that the trial court's admission of the videotape constituted a serious abuse of discretion. Under New York law, photographic evidence is admissible if it tends "to prove or disprove a disputed or material issue, to illustrate or elucidate other relevant evidence, or to corroborate or disprove some other evidence offered or to be offered" and "should be excluded only if [its] *sole purpose* is to arouse the emotions of the jury and to prejudice the defendant." People v. Wood, 79 N.Y.2d 958, 960, 591 N.E.2d 1178, 1179, 582 N.Y.S.2d 992, 993 (1992) (quoting People v. Pobliner, 32 N.Y.2d 356, 370, 298 N.E.2d 637, 345 N.Y.S.2d 482 (1973)) (emphasis added in *Wood*). Here, the videotape was clearly probative of material issues in the case, including petitioner's possession of a firearm and his identity as the perpetrator. Thus, petitioner fails to demonstrate that the trial court's admission of the videotape was erroneous. Moreover, even assuming *arguendo* that the trial court's ruling was erroneous under New York law, it did not deprive petitioner of his constitutional right to a fundamentally fair trial. "Where allegedly prejudicial evidence is probative of an essential element in the case, its admission does not violate the defendant's right to due process." Santana v. Brown, No. 09

-26-

Civ. 5176, 2013 WL 2641460, at *8 (S.D.N.Y. June 12, 2013) (internal quotation marks and citation omitted).

In sum, as the Court cannot discern a question of constitutional dimension raised by petitioner's claim that the videotape was erroneously admitted, he has failed to demonstrate that the Appellate Division's denial of his claim on the merits was either contrary to, or involved an unreasonable application of, clearly established federal law. Accordingly, I conclude, and respectfully recommend, that the remaining portion of petitioner's third claim provides no basis for habeas relief.

## IV. CONCLUSION

For the reasons set forth above, I conclude—and respectfully recommend that Your Honor should conclude—that the instant petition for a writ of habeas corpus should be denied in its entirety. Further, because reasonable jurists would not find it debatable that petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued. See 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).

Dated:   September 24, 2014
         White Plains, New York

Respectfully Submitted,

PAUL E. DAVISON, U.S.M.J.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days, or a total

of seventeen (17) days, from service of this Report and Recommendation to serve and file written objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections, if any, along with any responses to the objections, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Hon. Cathy Seibel, at the Hon. Charles L. Brieant, Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.  See Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to Judge Seibel.


A copy of this Report and Recommendation has been mailed to:

Rodney Alston, 06A5228
Eastern NY Correctional Facility
30 Institution Rd
P.O. Box 338
Napanoch, New York 12458-0338